IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 18-250 & 19-35 |
| | ) |
| JENNIFER LYNNE CLARK, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## **OPINION**

I.    Introduction

Pending before the court are identical motions for compassionate release filed pro se by defendant Jennifer Lynne Clark ("Clark") at each of her criminal cases (Crim. No. 18-250, ECF No. 108; Crim. No. 19-35, ECF No. 94), with attached exhibits and medical records.[1] The government filed a response, opposing relief on procedural and substantive grounds, with attached exhibits and medical records (ECF No. 113). The motions are ripe for disposition.

II.    Procedural Background

Pursuant to a plea agreement, Clark pleaded guilty in Criminal Number 18-250 to wire fraud and aggravated identity theft; and pleaded guilty in Criminal Number 19-35 to mail fraud and aggravated identity theft. On October 28, 2021, Clark was sentenced at both cases. The court sentenced Clark to a total term of imprisonment of 30 months at each case (6 months at the fraud count, followed by the statutory mandatory consecutive term of 24 months for aggravated identity theft), with the sentences at each case to run concurrent. The court imposed a total of 3 years of supervised release at each case, to run concurrent.

---

[1] The court will cite the documents at Criminal Number 18-250, unless otherwise noted.

1

Clark is 45 years old and is currently incarcerated at the Federal Medical Center in Lexington, KY ("FMC Lexington").  Her projected release date is May 26, 2023.  The court takes judicial notice that there are currently 9 inmates and 0 staff at FMC Lexington with COVID-19.  https://www.bop.gov/coronavirus/covid19_statistics.html, last visited April 20, 2023.

Clark tested positive for COVID-19 on September 2, 2021.  (ECF No. 97).  There is no evidence that Clark experienced severe symptoms.  Clark was vaccinated against the COVID-19 virus, receiving two doses of the Moderna Vaccine in January and February, 2022 (ECF No. 113-3).  Clark did not present any evidence about the impact of her vaccination on her risk of contracting the COVID-19 virus again or her risk of experiencing severe symptoms if she does get infected.

Clark contends that she is vulnerable to severe illness and death if exposed to COVID-19 due to: (1) chronic liver disease; (2) spinal cord injury; (3) mood disorder; and (4) being a former smoker.  Clark submitted certain medical records, but the government accurately points out that the records do not fully support the extent of her claimed medical conditions.  The medical records reflect that Clark has "redemonstration of periportal edema," but not "non-alcoholic fatty liver disease."  The reference to "liver disease" is handwritten (ECF No. 108-1 at 12).  The Presentence Report (prepared in May 2020) reflects that Clark had spinal surgery in 2004 and spinal injections in 2010 and 2019.  (ECF No 61).  The records reflect mild-to-moderate degenerative disc disease, and moderate to severe cord flattening at T11-T12. (ECF No. 108-1 at 14, 16).  Clark has been able to work as an orderly, despite her condition.  (ECF No. 108-1 at 6).  There is no reference to mood disorder in the medical records submitted by Clark, although the Presentence Report notes that she was diagnosed with anorexia, bulemia, bipolar disorder,

PTSD, depression, anxiety, and trouble sleeping and has a lengthy history of counseling and medication to address her mental health. (ECF No. 61). Clark's history of smoking a pack of cigarettes per day for the last 30 years is self-reported. (ECF No. 108-1 at 20).

III. Discussion

A. **Exhaustion of administrative remedies**

As an initial matter, the government contends that Clark did not present all her reasons to the Bureau of Prisons ("BOP") and, therefore, did not exhaust her administrative remedies. The government acknowledges that in her request to the warden, Clark raised the danger of COVID-19 due to her liver disease and spinal cord injury, but argues that Clark did not cite her mood disorder or former smoking habit as a basis for release. The court concludes that Clark's request sufficiently put the BOP on notice to consider the impact of COVID-19 in light of all her medical conditions. United States v. Briston, No. CR 05-321, 2022 WL 5109085, at *3 (W.D. Pa. Oct. 5, 2022) ("The fact that Briston listed additional medical conditions in his motion to the court does not constitute a basis for relief that was not presented to the BOP."). Therefore, the court will address Clark' requests for compassionate release on the merits.

B. **Applicable Law**

Clark seeks compassionate release from imprisonment. A district court has only limited authority to "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); United States v. Savani, 733 F.3d 56, 60 (3d Cir. 2013). The Third Circuit Court of Appeals has recognized that Congress enacted exceptions to this "general rule of finality" in 18 U.S.C. § 3582(c)(1). United States v. Easter, 975 F.3d 318, 323 (3d Cir. 2020) (explaining that "[s]entence modifications under § 3582(c) constitute 'exception[s] to the general rule of finality' of

3

sentences") (quoting <u>Dillon v. United States</u>, 560 U.S. 817, 824 (2010)).

Section 3582(c)(1)(A) provides:

**(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case--

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). The statute sets forth a three-step analysis for district courts to utilize to resolve a motion for compassionate release. The Third Circuit Court of Appeals has instructed that pursuant to § 3582(c)(1)(A), "a district court 'may reduce [a federal inmate's] term of imprisonment' and 'impose a term of probation or supervised release … if it finds that … extraordinary and compelling reasons warrant such a reduction.'" <u>United States v. Pawlowski</u>,

967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). "[B]efore granting compassionate release," however, "a district court must 'consider[] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. (quoting 18 U.S.C. § 3582(c)(1)(A)). The court must also consider whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission, 18 U.S.C. § 3582(c)(1)(A). United States v. Andrews, 12 F.4th 255, 258 (3d Cir. 2021) (prisoner's compassionate release motion "may be granted if the court finds that the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable.").

Based upon the foregoing, to grant Clark compassionate release under § 3582(c)(1)(A), the court must analyze whether: (1) extraordinary and compelling reasons exist for her release; (2) compassionate release is warranted in consideration of the § 3553(a) factors;[2] and (3)

---

[2]    The factors set forth in 18 U.S.C. § 3553(a) are:
- the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);
- the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);
- the sentencing range established by the Sentencing Commission, § 3553(a)(4);
- any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);
- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and
- the need to provide restitution to any victims of the offense, § 3553(a)(7).

compassionate release is consistent with applicable policy statements issued by the Sentencing Commission.

Clark bears the burden of proof by a preponderance of the evidence to show that she is entitled to compassionate release. United States v. Smith, No. CR 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020) (citing United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020)). Courts have held that to satisfy this burden, a movant must produce evidence to the court. See e.g., United States v. Matthews, Crim. Action No. 09-612-1, 2020 WL 5217132, at *6 (E.D. Pa. Sept. 1, 2020); United States v. Brunetti, Crim. Action No. 2020 WL 4516541, at *6 (E.D. Pa. July 31, 2020); United States v. Richardson, Crim. No. 18-507, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020).

### C. Extraordinary and Compelling Reasons

#### 1. General Background

Prior to the enactment of the First Step Act on December 21, 2018, only the Director of the BOP could file a motion for a sentence reduction under §3582(c)(1)(A)(i). Ray v. Finley, No. 3:19-CV-0988, 2019 WL 5569616, at *3 (M.D. Pa. Oct. 29, 2019). The First Step Act amended § 3582(c)(1)(A), which now provides that "a motion for reduction in sentence may be filed by either the Director of the BOP or a federal inmate" after the federal inmate exhausts administrative remedies. Id.

"Congress did not define 'extraordinary and compelling reasons' except to provide 'rehabilitation…alone' does not suffice." Adeyemi, 2020 WL 3642478, at *7 (quoting 28 U.S.C. § 994(t)). The Third Circuit Court of Appeals has explained that "compelling and extraordinary" reasons for the reduction of a sentence are "defined by the commentary to policy statement U.S.S.G. § 1B1.13." United States v. Handerhan, No. 19-1904, 789 F. App'x 924, 925 (3d Cir.

2019) (citing United States v. Barberena, 694 F.3d 514, 521 n.10 (3d Cir. 2012)). "That commentary currently lists four categories of such reasons: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) 'other reasons' as determined by the Director of the Bureau of Prisons." Id. (quoting U.S.S.G. § 1B1.13 cmt. n.1.). The court in Adeyemi explained the first three categories as follows:

> The first category includes incarcerated persons suffering from terminal illnesses, such as metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia, or those suffering from medical conditions, impairments, or deteriorations due to age that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which she or she is not expected to recover."…The second category includes incarcerated persons who are at least sixty-five years old, experience a serious deterioration in physical or mental health because of the aging process; and have served at least ten years or seventy-five percent of their term of imprisonment, whichever is less….The third extraordinary and compelling reason may arise where the primary caregiver of the incarcerated person's minor child or children died or became incapacitated or where the incarcerated person's spouse became incapacitated and she is the only available caregiver for the spouse.

Adeyemi, 2020 WL 3642478, at *7 (citing U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)).

In Andrews, the court of appeals held that district courts are not strictly bound by the policy set forth in the sentencing guidelines. Andrews, 12 F.4th at 259. On the other hand, the district court "did not err when it consulted the text, dictionary definitions, and the policy statement to form a working definition of 'extraordinary and compelling reasons.'" Id.

The court in Somerville provided a helpful working definition:

The word "extraordinary" is commonly understood to mean "going beyond what is usual, regular, or customary," or "exceptional to a very marked extent." *Extraordinary*, Merriam-Webster Dictionary (2020); see also *Extraordinary*, Black's Law Dictionary (11th ed. 2019) ("Beyond what is usual, customary, regular, or common.").

The word "compelling" means "forceful," "demanding attention," or "convincing." *Compelling*, Merriam-Webster Dictionary (2020); see also *Compelling Need*, Black's Law Dictionary (11th ed. 2019) ("A need so great that

> irreparable harm or injustice would result if it is not met.").
>
> Thus, at a minimum, § 3582(c)(1)(A)(i) requires a justification for release that is both unusual (i.e., unique to the inmate, and beyond the ordinary hardship of prison) and significant (i.e., serious enough to make release appropriate).

Somerville, 2020 WL 2781585, at *7.

### 2. Consideration of COVID-19

In Somerville, the court concluded that "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a ***uniquely high risk*** of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." Somerville, 2020 WL 2781585 at *4 (emphasis added). That test must be modified in light of the COVID-19 vaccinations that are occurring. Even if an inmate has serious underlying medical conditions and faces a non-speculative risk of exposure to the COVID-19 virus, the vaccine may prevent that inmate from contracting the virus or significantly reduce that inmate's risk of infection or reinfection. United States v. Rhodes, No. CR 15-23, 2021 WL 4460031, at *4 (W.D. Pa. Sept. 29, 2021).

The court, therefore, needs to determine whether Clark set forth extraordinary and compelling reasons for her compassionate release based upon her asserted medical conditions and the situation at FMC Lexington – taking into account her vaccination. Clark has the burden to produce evidence to show that: (1) she faces a uniquely high risk of grave illness or death if infected or reinfected by the COVID-19 virus, considering her underlying medical conditions and age and the protective effects of the vaccine; and (2) she faces a non-speculative risk of contracting or recontracting the COVID-19 virus, considering both the risk of exposure at FMC Lexington and the preventative effects of the vaccine.

      a.  Whether Clark faces a uniquely high risk of grave illness or death from being reinfected by the COVID-19 virus

In her motion, Clark contends that she has a uniquely high risk of grave illness or death from the COVID-19 virus due to her preexisting medical conditions of (1) chronic liver disease; (2) spinal cord injury; (3) mood disorder; and (4) being a former smoker. As the government pointed out, the medical records submitted by Clark do not fully support her allegation that these conditions place her at significantly greater risk from COVID-19. Clark is only 45 years old. Clark **did** contract COVID-19 – prior to her vaccinations – but did not experience severe symptoms. Clark did not demonstrate that she has any risk factors that would indicate she faces a uniquely serious threat from the COVID-19 virus. In addition, because Clark is now vaccinated, her risk of severe illness from the COVID-19 virus is substantially mitigated. The court concludes that Clark did not meet her burden to demonstrate extraordinary and compelling reasons for compassionate release.

The medical records reflect that Clark is, in fact, receiving proper medical treatment for her preexisting conditions. She is serving her sentence at a BOP medical center. Her conditions do not prevent Clark from providing self-care in the correctional environment. There is no evidence that the prison environment exacerbates Clark' conditions and it appears that she would experience the same symptoms if she were released. Under the present circumstances, Clark's medical conditions do not warrant compassionate release.

The court concludes that, based on this record, because Clark is now vaccinated she cannot establish that she faces an extraordinary or compelling risk from the COVID-19 virus. "Although vaccines are not one hundred percent effective, the CDC states that '[c]urrently authorized vaccines in the United States are highly effective at protecting vaccinated people against symptomatic and severe COVID-19.' Vaccines are particularly effective at preventing

'severe illness and death.'" United States v. Singh, No. 4:15-CR-00028-11, 2021 WL 928740, at *2 (M.D. Pa. Mar. 11, 2021) (concluding that recent vaccination mitigated risk to such an extent that COVID-19, in combination with defendant's underlying conditions, no longer presented an extraordinary and compelling reason to grant compassionate release). In Singh, the court recognized that the inmate in that case had underlying medical conditions which ordinarily would have established grounds for compassionate release. The court concluded, however, that vaccination mitigated those risks. Id. at *3. The court's conclusion was "in accord with the vast majority of courts that have considered this issue." Id. (citations omitted). In United States v. Doan, 2022 WL 1551830 (3d Cir. May, 17, 2022), the Third Circuit Court of Appeals affirmed denial of compassionate release, even though the inmate had medical conditions associated with severe illness or death from COVID-19, where the inmate previously contracted COVID-19, fully recovered, and was later vaccinated.

In other words, the decisions teach that even assuming Clark has serious medical conditions, because Clark is vaccinated she faces a reduced risk that: (1) she will contract the COVID-19 virus; and (2) if she is infected, she will experience severe symptoms. In Singh, the court emphasized that an inmate bears the burden to demonstrate that compassionate release is warranted and denied the motion without prejudice to the inmate's opportunity to file a new motion supported by evidence that the vaccine would not mitigate a substantial risk of serious illness from a COVID-19 infection. Id. at *4.

In this case, Clark similarly failed to meet her burden to demonstrate that she continues to face a substantial risk from the COVID-19 virus despite her vaccination. While there are certainly still unknowns about the vaccine administered to Clark, it appears that Clark' risks of (1) being infected by COVID-19, and (2) suffering severe illness if she is infected, are

speculative because of her vaccination. On this record, the court concludes that Clark failed to meet her burden to show extraordinary and compelling reasons for compassionate release due to the COVID-19 virus.

        b. Whether Clark faces an actual, non-speculative risk of contracting the COVID-19 virus at FMC Lexington

As noted above, there are 9 current cases of COVID-19 infection among the inmates at FMC Lexington. The court recognizes that it is difficult to engage in social distancing and other mitigation efforts in a congregate setting such as a prison. On the other hand, many inmates (including Clark) and staff members have now been vaccinated for COVID-19. Vaccination of all or substantially all inmates and staff will limit the spread of the virus and reduce the risk of exposure. As noted above, even if Clark is exposed to the COVID-19 virus, it appears that she will be far less likely to be infected or suffer serious symptoms due to her vaccination. In sum, it would be speculative at this point for the court to conclude there is an actual risk that Clark, after her vaccination, will be infected by the COVID-19 virus at FMC Lexington.

        c. Conclusion about COVID-19

Because Clark recovered from COVID-19 and received the two doses of the Moderna vaccine, the court cannot find that she met her burden to establish that she is at "*uniquely* high risk" of being infected with the COVID-19 virus or experiencing serious illness if she is infected with the COVID-19 virus. To conclude otherwise would be speculative, based upon the record before this court. In sum, Clark did not show an extraordinary and compelling reason for her compassionate release and the court need not consider the § 3553(a) factors.

**V. Conclusion**

Once a court imposes a sentence and it becomes final, it may not be modified unless an exception to the rule of finality applies in the case. Here, Clark did not satisfy her burden under § 3582(c)(1)(A) to show that an extraordinary and compelling reason warrants her compassionate release from imprisonment. Her motions for compassionate release (Crim. No. 18-250, ECF No. 108; Crim. No. 19-35, ECF No. 94) will, therefore, be denied.

An appropriate order will be entered.

Dated:      April 25, 2023.

                                      BY THE COURT:

                                      s/ Joy Flowers Conti
                                      Joy Flowers Conti
                                        Senior United States District Judge